**FILED**

APR 3 0 2012

Clerk, U S  District & Bankruptcy
Court for the District of Columbia

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**JACK W. DALY** (6035 Woodlake Lane, 
Alexandria, VA 22315), *703. 400. 6057*

        **Plaintiff (*Pro Se*),**

    **v.**

**M. JOHN BERRY**, as Director of the OPM, 
**OFFICE OF PERSONNEL MANAGEMENT** 
(OPM, 1900 E Street NW, Washington, DC 20415), 
**BARACK H. OBAMA**, as President of the United 
States and agency head of the Executive Office 
of the President (EOP, The White House, 1600 
Pennsylvania Ave. NW, Washington, DC 20500), 
**MARTIN R. CASTRO**, as Chairman of the U.S. 
Commission on Civil Rights (USCCR, 624 Ninth 
Street NW, Washington, DC 20425), **ABIGAIL 
THERNSTROM**, as Vice-Chairman thereof, 
**MICHAEL YAKI**, as Commissioner thereof, 
**ROBERTA ACHTENBERG**, as Commissioner 
thereof, **DAVID KLADNEY**, as Commissioner 
thereof, **PETER KIRSANOW**, as Commissioner 
thereof, **GAIL HERIOT**, as Commissioner thereof, 
and **TODD GAZIANO**, as Commissioner thereof,

        **Defendants.**

# C O M P L A I N T

**Civil Action No.** _____

Case: 1:12-cv-00698
Assigned To : Jackson, Amy Berman
Assign. Date : 4/30/2012
Description: Pro Se Gen. Civil

## INTRODUCTORY STATEMENT

    At its core this case is a rule making challenge to a policy adopted by the Office of 
Personnel Management (OPM) that improperly permits the political patronage arm of the White 
House to control non-Presidential appointments at departments and independent agencies – 
appointments that Congress and the courts have repeatedly said the President has no legal right 
to obstruct or control.  Although the application of this new rule did result in the improper 
revocation of Plaintiff's appointment, Plaintiff manifestly does not complain of or challenge any 
personnel action committed to agency discretion by law, and Plaintiff takes care that it not be

confused with such. This is a rule making challenge that, if successful, will result in Plaintiff receiving the emoluments to which he was entitled by reason of his appointment.

Plaintiff was duly appointed by a Commissioner of the U.S. Commission on Civil Rights ("USCCR" or "Commission") to work as his Special Assistant for that agency. After being transferred (from another position at another agency), Plaintiff entered onto duty and took his oath of office. In violation of law, Plaintiff's appointment was subsequently revoked by the 43rd President and/or his agents in the Executive Office of the President ("EOP" or "White House") and OPM on the ground that Plaintiff was not on the White House's "must-hire list" of persons granted "political clearance" for that appointment.

Although there are indeed several thousand Federal jobs for which the President holds absolute or indirect appointment power, the position of Special Assistant to a Commissioner on the USCCR – an independent agency not even sited in the executive branch – is not among them. The President is completely without authority to countermand the judgment of the USCCR Commissioners as to who should serve them as Special Assistants and arrogate to himself the plenary appointing power delegated to the USCCR Commissioners by statute.

The *de facto* means by which the White House effected the improper revocation of Plaintiff's appointment was by instructing its White House Liaison at the OPM to refuse to authorize the return to the USCCR of an executed "OPM Form 1019." The return of said Form 1019 is a ministerial task that would re-certify that the position of "USCCR Commissioner's Special Assistant" is still suitable for exception from the examining requirements of the competitive service. Excepting the position from that process (due to the confidential nature of the position) would mean that each Commissioner could conduct a candidate search in accordance with his or her own sense of propriety, rather than requiring each Commissioner to

conduct it in strict accordance with the standard competitive examining requirements designed to keep federal employment generally fair and open.

Although the decision by OPM (whether a position is of a confidential nature) is required by law to be based on an examination of ***the job description*** itself (see 6 U.S. Op. Off. Legal Counsel 114 [January 27, 1982]), the rule change challenged by Plaintiff here mandated that the ministerial decision henceforth be made not in accordance with the job description, but rather according to whether the appointee who had been selected to fill the position has received political clearance from the White House. The challenged rule forbids the return of a Form 1019 for those, like Plaintiff, who have not bought or earned the President's favor. This corruption of the employment process resulted in the absurd result of OPM finding the position of USCCR Commissioner's Special Assistant suitable for exception when filled by someone on the White House "must-hire" list, but unsuitable for such exception ***one week later*** when the Commissioner's appointee was the plaintiff. OPM persists in this practice today.

From a legal standpoint this action is extremely complex. It entails a confluence of many areas of federal law, each of which is complex in its own right. These areas include several constitutional provisions, a rulemaking challenge, seemingly countless statutes, rules, and regulations designed by Congress to govern agency action, protect Federal employees, and guarantee the "independence" of certain agencies, and a bevy of laws designed to afford preference to disabled veterans, of which the plaintiff is one.

This complexity is a testament not to the creativity and ingenuity of Plaintiff, but rather to the commitment Congress and the courts have made to ending the corruption of the appointments system to the extent possible, and to the myriad ways the courts and the Congress have designed or recognized to try to put the practice to an end. Plaintiff will show that any one of these numerous causes of action entitles him to relief.

3

## PARTIES

1.      Plaintiff **Jack W. Daly** ("Mr. Daly") is a citizen of the state of Texas and the United
States temporarily resident in the state of Virginia by reason of his service as a civilian Federal
employee. A disabled veteran, Mr. Daly is a preference eligible veteran within the meaning of
the Veterans Employment Opportunities Act of 1998 (VEOA).  Assigned a permanent 20%
service-connected disability rating by the Departments of the Army and Veterans Affairs in
1991, he enjoys 10-point compensable preference eligible veteran status.  In compliance with the
Disabled Veterans Affirmative Action Plan (DVAAP) mandated by the Rehabilitation Act of
1973, the U.S. Department of Labor (DOL) selected Mr. Daly for a Veterans Readjustment Act
(VRA) appointment to a career position in the competitive service.  He accepted that non-
competitive, excepted, VRA appointment and entered onto duty in his DOL position in 2001.
His VRA appointment was later converted to a career-conditional appointment.  On January 23,
2005, Mr. Daly accepted his GS-13 appointment to one of the eight USCCR Commissioner's
Special Assistant positions that have been established and excepted under Schedule C of the
excepted service by annual appropriation statute since 1987.  On January 30, 2005, he was
transferred from the DOL to the USCCR with no break in service.  On January 31, 2005, he
entered onto duty and took his oath of office.  Although his appointment was coterminous with
that of his Commissioner (expiring on or about December 3, 2010) as a matter of law, Mr. Daly
became an erroneously separated USCCR employee on April 1, 2005.  He mitigated his damages
by accepting appointments in the legislative branch.  Between June 16, 2006 and July 31, 2009,
he was employed by the U.S. Senate.  Between May 17, 2010 and beyond December 2010, he
was employed by the U.S. House of Representatives.  As a result of the Defendants' continuing
failure to remedy his erroneous separation, Mr. Daly has been deprived of 24 months of salary
and benefits as well as two years of time in service towards his future retirement.  In the absence

of the record correction required by law, Mr. Daly will be required to work for the Federal government for an additional two years before he is eligible to retire with full pension benefits.

2.      Defendant **M. John Berry** is sued in his official capacity as Director and agency head of the Office of Personnel Management. Defendant Berry has perpetuated and replicated his predecessors' violations of law at issue in this action.  He is an adult citizen of the District of Columbia and the United States.

3.      Defendant **Office of Personnel Management** (OPM), named as the defendant for Plaintiff's VEOA claim, was established by the Civil Service Reform Act of 1978 (CSRA) as one of the several agencies that succeeded the Civil Service Commission, which was established under the "Pendleton Civil Service Act of 1883 [to] replace a patronage system under which civil service appointments had frequently been used to reward political supporters." (quoting Augustine v. Dept. of Veterans Affairs, 88 M.S.P.R. 407 (2001)).

4.      Defendant **Barack H. Obama** is sued in his official capacity as President of the United States and agency head of the Executive Office of the President (EOP or White House) and White House therein.  He is a citizen of the state of Illinois and the United States, temporarily resident in the District of Columbia by reason of his election as the country's 44th President. Defendant Obama has perpetuated and replicated those personnel policies of his predecessor that Plaintiff alleges hereinafter to be unlawful.  The EOP is an agency established by the Congress in 1939 upon the recommendation of the Brownlow Committee.   The EOP consists of the President's immediate and support staffs who advise him on matters of politics, law, policy, administration, management, the thousands of Presidential appointments government-wide, appointments to the dozens of non-career Senior Executive Service (SES) and Schedule C positions within the EOP, appointments to the thousands of non-career SES and Schedule C appointments at the executive branch departments, and appointments to the hundreds of non-

career SES and Schedule C appointments at the independent agencies. Among its internal offices is the "White House Office," which includes the White House Office of Presidential Personnel (WH OPP or PPO), White House Counsel's Office (WHCO), and White House Office of Political Affairs (WH OPA).

5.      Defendant **Martin R. Castro** is sued in his official capacity as a USCCR Commissioner and Chairman of the United States Commission on Civil Rights (USCCR or Commission). He is an adult citizen of the state of Illinois and of the United States. The USCCR was established by the Congress in 1957 as a temporary, nonpartisan, apolitical, quasi-legislative, fact-finding commission. It is delegated only those investigative powers and advisory functions that can be exercised by a congressional committee. The USCCR is not now and has never been delegated the quasi-executive powers and functions exercised by an independent regulatory agency or the quasi-judicial powers and functions exercised by an independent adjudicatory tribunal. It is the only independent agency with the statutory mandate to monitor the executive branch's compliance with and enforcement of civil rights laws and annually report its findings to the Congress. Before its statutory reorganization in 1983, the USCCR was sited within the executive branch and headed by six Commissioners appointed by the President with the advice and consent of the Senate. Since 1983, the Commission has had eight Commissioners who comprise its agency head: four are appointed by the Congress; four are appointed by the President; none is a principal or inferior officer in the constitutional sense; all are appointed on a staggered basis to fixed, six-year terms; none is subject to at-will removal by the President; no more than four may be affiliated with the same political party; the pair appointed by the House Speaker must not belong to the same political party; the pair appointed by the Senate President Pro Tem must not belong to the same political party; and the President's designation of a Chairman, designation of

a Vice-Chairman, and appointment of a Staff Director require prior approval of a majority of Commissioners.

6.      Defendant **Abigail Thernstrom** is sued in her official capacity as a USCCR Commissioner and Vice-Chairman of the USCCR. She is an adult citizen of the state of Virginia and of the United States.

7.      Defendant **Michael Yaki** is sued in his official capacity as a USCCR Commissioner. He is an adult citizen of the state of California and of the United States.

8.      Defendant **Roberta Achtenberg** is sued in her official capacity as a USCCR Commissioner. She is an adult citizen of the state of California and of the United States.

9.      Defendant **David Kladney** is sued in his official capacity as a USCCR Commissioner. He is an adult citizen of the state of Nevada and of the United States.

10.     Defendant **Peter Kirsanow** is sued in his official capacity as a USCCR Commissioner. He is an adult citizen of the state of Ohio and of the United States.

11.     Defendant **Gail Heriot** is sued in her official capacity as a USCCR Commissioner. She is an adult citizen of the state of California and of the United States.

12.     Defendant **Todd Gaziano** is sued in his official capacity as a USCCR Commissioner. He is an adult citizen of the state of Virginia and of the United States.

## VENUE

13.     Venue lies with this Court pursuant to 28 U.S.C. § 1391(e)(2). The District of Columbia is the forum in which Plaintiff's claims arose, Defendant agencies are sited, Defendants are required to discharge their duties, and Defendants' continuing violations of law occur.

## JURISDICTION

14.     This Court's jurisdiction over this action is invoked under: 5 U.S.C. § 3330b (Veterans Employment Opportunities Act); 5 U.S.C. §§ 701 et seq. (Administrative Procedure Act); 28

U.S.C. § 1331 (Federal Question Statute); 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act); 28 U.S.C. § 1361 (Mandamus Act); 28 U.S.C. § 1651(a) (All Writs Act); the USCCR's organic statute (42 U.S.C. §§ 1975 *et seq.*, particularly 42 U.S.C. § 1975b(e) and 42 U.S.C. § 1975b(a)(2)(A)) and annual appropriation statute (e.g., Public Law 108-447, December 8, 2004, 118 Stat. 2809); the "private right of action implied by statute" doctrine recognized by the Supreme Court of the United States and by this Court in cases such as <u>Borders v. Reagan</u>, 518 F.Supp. 250 (D.D.C.1981) (concerning an independent agency's organic statute) and <u>Mundy v. Weinberger</u>, 554 F.Supp. 811 (D.D.C.1982) (concerning an independent agency's organic and appropriation statutes); the <u>Accardi</u> doctrine; the <u>Larson</u> *ultra vires* doctrine; 5 U.S.C. § 5596 (Back Pay Act); and, this Court's general legal and equitable powers.

15.     The decisions of this Court and this Circuit recognize this Court's jurisdiction over Plaintiff's claim that agency action resulted in the improper revocation of his appointment by someone other than his appointing officer and by an agency other than his employing agency. See, e.g., <u>NTEU v. Reagan</u>, 663 F.2d 239, 214 U.S.App.D.C. 62 (D.C.Cir.1981).  The decisions of this Court and this Circuit also recognize that the "Congress went to great lengths to put various structural features in place to preserve the independence, autonomy, and non-partisan nature of the Commission" in response to the chronic corruption of the Commission by illicit gamesmanship and political patronage abuses in appointments.  In <u>Berry v. Reagan</u>, 32 Empl. Prac. Dec. (CCH) P33, 898 (D.D.C.1983), this Court enjoined the President's unlawful removals of Commissioners and, indirectly, the Commission's erroneous separation of the Special Assistants to those Commissioners.  In <u>George v. "Acting Staff Director" Ishimaru</u>, 849 F.Supp. 68 (D.D.C.1994), this Court declared the President's appointment of the Staff Director (under the wrong appointment authority and without the requisite approval of the Commissioners) to be invalid and remedied the Commission's failure to bar his entrance onto duty and accession to the

payroll. In <u>Kirsanow v. Wilson</u>, 290 F.3d 347, 351 U.S.App.D.C. 261 (D.C.Cir.2002), *cert.*

*denied* 123 S.Ct. 581, 537 U.S. 1028, 154 L.Ed.2d 442, the Court of Appeals declared the

President's appointment of a Commissioner to be valid and remedied the Commission's: failure

to discharge its ministerial duty to record his appointment in the manner prescribed by law;

illegal restraint of his entrance onto duty; and, unlawful deprivation of his entitlement to the

privileges and emoluments of his duly appointed position.

16.    Since VEOA cases before this Court are few and far between, it is instructive to

summarize the operation of that statutory framework that confers jurisdiction upon this Court. In

<u>Conyers v. Rossides</u>, 558 F.3d 137, 148-149 (2d Cir. N.Y. 2009), the Court said:

> "The purpose of the VEOA is to provide preference eligible veterans with a method for
> seeking redress where their veterans' preference rights have been violated in hiring
> decisions made by the federal government." <u>Kirkendall v. Dep't of Army</u>, 479 F.3d 830,
> 837 (Fed. Cir. 2007). "Where a veteran establishes a violation, the agency is ordered to
> comply with the veterans' preference statutes and award compensation for any lost
> wages or benefits suffered by reason of the violation." Id. (citing 5 U.S.C. § 3330c(a)).
> To this end, 5 U.S.C. § 3330a provides, inter alia, that a "preference eligible" person
> "who alleges that an agency has violated such individual's rights under any statute or
> regulation relating to veterans' preference may file a complaint with the Secretary of
> Labor." Subsection 3330a(d), in turn, provides that "[i]f the Secretary of Labor is unable
> to resolve a complaint under subsection (a) within 60 days after the date on which it is
> filed, the complainant may elect to appeal the alleged violation to the Merit Systems
> Protection Board." After taking such an appeal, § 3330b -- the provision here relied
> upon by [Plaintiff] -- allows a preference eligible person, "[i]n lieu of continuing the
> administrative redress procedure provided under section 3330a(d) . . . [to] elect, in
> accordance with this section, to terminate those administrative proceedings and file an
> action with the appropriate United States district court not later than 60 days after the
> date of the election." Such an election "may not be made," however, either "(1) before
> the 121st day after the date on which the appeal is filed with the MSPB under section
> 3330a(d); or (2) after the MSPB has issued a judicially reviewable decision on the
> merits of the appeal." 5 U.S.C. § 3330b(b).

It is well settled that a violation of a preference eligible's rights occurs when an employing

agency follows an OPM rule or OPM policy that abrogates or vitiates veterans' preference

required by law, rule, or regulation. See <u>Gingery v. DOD</u>, 550 F.3d 1347 (Fed. Cir. 2008). See

also, <u>Patterson v. DOI</u>, 424 F.3d 1151 (Fed. Cir. 2005) (the Court held it had subject matter

jurisdiction to decide whether an OPM regulation was "reasonable and consistent with" the Veterans' Preference Act) and Hunt v. OPM, 20 Fed. Appx. 902, 904 (Fed. Cir. 2001) (the Court held that a sufficient allegation to state a justiciable claim occurs when a plaintiff argues "that the OPM guidance is inconsistent with the statutory provisions for granting veterans' preferences," "allege[s] that OPM directly interfered with his candidacy for any specific selection action by his employing agency," and "connects the OPM guidance with a concrete violation of his rights in connection with a specific employment opportunity").

17.     Plaintiff filed a VEOA complaint with DOL on May 30, 2005 (less than 60 days after his erroneous separation from his duly appointed position and the Commission's payroll).   In reliance on the OPM's assertion that veterans' preference did not apply to Schedule C appointments, the DOL declined to open an investigation on the ground that the Secretary lacked jurisdiction. The uncontroverted evidence of the timely filing of Plaintiff's VEOA complaint is in the administrative record of Plaintiff's VEOA appeal before the MSPB.   In addition to Plaintiff's own affidavit, the DOL produced an affidavit that named one of the DOL employees who remembers Plaintiff's VEOA complaint and also disclosed one e-mail (dated June 21, 2005) from the numerous e-mail exchanges in which Plaintiff discussed his VEOA complaint with DOL employees.   After Plaintiff filed an amended VEOA complaint, the DOL obtained the OPM's admission that veterans' preference applies to Schedule C appointments and thereafter conducted an investigation. The EOP, OPM, and USCCR were uncooperative and refused to comply with the DOL's requests for information and document production.   After the DOL's attempt to resolve Plaintiff's complaint proved futile and more than 60 days passed, Plaintiff filed a VEOA appeal with the MSPB.

18.     The EOP and OPM defaulted in the case on the ground that they felt they could not be required to file the response mandated by statute, obey the orders of the Administrative Judge

(AJ), or participate in discovery unless and until the AJ first exercised subject matter jurisdiction. The AJ told Plaintiff's counsel he did not have time to read the pleadings and declined to hold a fact-finding hearing unless he first found he had subject matter jurisdiction. After the AJ issued his "Initial Decision" dismissing Plaintiff's case for lack of subject matter jurisdiction, Plaintiff timely filed his "Notice of Election to Terminate" the MSPB's jurisdiction over his VEOA appeal against Defendant OPM and timely filed that action with this Court (Civil Action No. 08-2238). The AJ's initial decision is not judicially reviewable and it is not a decision on the merits. "Since the AJ's dismissal of plaintiff's appeal for lack of subject matter jurisdiction became the final decision of the MSPB upon its denial of plaintiff's petition for review, the MSPB has not issued a 'judicially reviewable decision on the merits of the appeal.' 5 U.S.C. § 3330b(b)(2)." Conyers v. Hawley, 2007 U.S. Dist. LEXIS 57973, 21-22 (E.D.N.Y. July 26, 2007). Accord, Walker-Scurry v. Potter, 2008 U.S. Dist. LEXIS 117694, 11-12 (N.D. Fla. Feb. 27, 2008), adopted as Court opinion at 2008 U.S. Dist. LEXIS 27497 (N.D. Fla. Mar. 26, 2008). "Moreover, 'a dismissal for want of subject matter ... jurisdiction is not a decision on the merits. Consequently, upon such a dismissal the plaintiff is free to institute the suit anew in a jurisdiction or under circumstances supporting jurisdiction.' Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 n.4 (2d Cir. 1994)." Estate of Ungar v. Orascom Telecom Holding S.A.E., 578 F. Supp. 2d 536, 552 (S.D.N.Y. 2008). See Ricketts v. Midwest Nat'l Bank, 874 F.2d 1177 (7th Cir. Ind. 1989) ("a dismissal for want of subject matter jurisdiction is not a decision on the merits").

19.     The exhaustion doctrine has been satisfied. Plaintiff has exhausted his administrative remedies under the Commission's internal grievance process. Grievances were also lodged with both the EOP and the OPM to no avail. As for the potential availability of administrative redress before the MSPB pursuant to the CSRA, the CSRA does not cover the agency action challenged

in the instant case, and it therefore has no application to this dispute. Plaintiff was never subjected to an "adverse personnel action" as defined by the CSRA and he does not complain of the types of minor personnel actions that fall within the coverage of the CSRA (e.g., Chapter 43 covers removals and reductions in grade and pay based on unacceptable performance, 5 U.S.C. § 4303; Chapter 75 covers removals, suspensions, furloughs, and reductions in grade and pay taken to "promote the efficiency of the service" based on employee misconduct, 5 U.S.C. § 7503, § 7513).

20.     Plaintiff seeks declaratory relief, injunctive relief, and specific relief (e.g., the compensation for the loss of wages and benefits plus back pay as liquidated damages authorized by 5 U.S.C. § 3330c(a)).

21.     This matter has been the subject of investigation by the Congress and law enforcement agencies. At the request of the U.S. House of Representatives Committee on the Judiciary, the Congressional Research Service (CRS) issued a legal opinion (dated June 16, 2005) that determined the defendants' actions to be contrary to law, and that predicted Plaintiff would prevail if forced to litigate his erroneous separation. Both the President's Council on Integrity and Efficiency and the Executive Council on Integrity and Efficiency declined to open an investigation on the ground that United States Special Counsel Scott Bloch had jurisdiction. The Office of Special Counsel (OSC) closed its four-year investigation in February 2009 on the ground that it lacked jurisdiction. Plaintiff does not know the status of the investigations of the Washington Field Office of the Federal Bureau of Investigation, the public corruption unit of the U.S. Attorney's Office, or the OPM's Office of the Inspector General.

22.     In the unlikely event this Court's jurisdiction is wanting, Plaintiff preserves the right to move for transfer of this civil action to the United States Court of Federal Claims under 28

U.S.C. § 1631 for money damages pursuant to 28 U.S.C. § 1491(a) (Tucker Act), 5 U.S.C. §

8912, and money-mandating provisions of the U.S. Constitution, statutes, rules, and regulations.

## SUMMARY STATEMENT OF FACTS

23.    In addition to the factual allegations recited below, Defendants are on notice of all factual

allegations concerning Plaintiff and Defendants that were made in the grievances filed with the

USCCR, EOP, OPM, and DOL in 2005 and the voluminous administrative record of Plaintiff's

VEOA appeals against Defendant agencies before the MSPB (i.e., VEOA Complaint Exhibits A

through K, affidavits, and pleadings).

24.    The metes and bounds of a legally permissible process for the White House to request

Schedule C appointment consultations from some agency heads is established by the Attorney

General opinion issued at the request of the White House Counsel's Office, 6 U.S. Op. Off.

Legal Counsel 114 (January 27, 1982):

> Under President Carter, OPM had delegated to each agency the authority to establish
> those Schedule C positions it required. These delegations were rescinded on July 31,
> 1981. Normally, the judgment of a Schedule C nominee's fitness rests entirely with the
> appointing officer and the Executive Office of the President (EOP) cannot, on its own,
> involve itself with this decision. ... In most cases, the appointment power is vested in
> the head of the agency or one of his subordinates, not with the President. See NTEU v.
> Reagan, 663 F.2d 239 (D.C.Cir.1981). ... Appointments can only be revoked by the
> appointing official, which in almost all cases would not be the President. The heads of
> the agencies are vested with the authority to appoint individuals even if the President
> disapproves. Under the ... framework of statutes, regulations, and executive orders,
> OPM's responsibility in this area is ... straightforward. It must determine whether the
> agency's description of a proposed Schedule C position meets the criteria of a
> confidential or policy-determining job, and thus, whether a job may be placed in the
> excepted service. That is, OPM "decides whether the duties of any particular position
> are such that the excepting authority is applicable to the position." FPM Basic Inst. 262,
> ch. 213, subch. 3, §3-1(c). Under E.O. 10440, OPM determines whether a position is of
> a confidential or policymaking character. The Order does not say that OPM
> authorization is dependent upon review by the EOP. ... If the President does not have
> the authority to have the name submitted to him for review, he does not have the
> authority to prevent OPM from authorizing the positions pending consultations or to
> insist that the appointing authority select a particular individual. If OPM's files are
> retrieved by reference to the individual applicant's name, it is impermissible for OPM to
> disclose that record to any other agency. 5 U.S.C. § 552a(b). ... A caveat to our advice
> concerning the exercise of authority by the EOP relates to the independent regulatory

agencies. The President's authority to persuade the heads of Executive Branch agencies to comply with his request [that they appoint individuals from the EOP's must-hire list and seek a political clearance examination and prior approval from the EOP before appointing individuals] is bottomed on his ability to enforce compliance by virtue of his removal power over recalcitrant Executive Branch officials. He does not have that power to the same extent over members of many of the "independent" agencies. Humphrey's Executor v. U.S., 295 U.S. 602 (1935). ... There are situations where the organic act of an agency specifically precludes review by the EOP. The organic act establishing the Consumer Product Safety Commission, for example, has such a provision. ... We would advise OPM to review the underlying statutes of each agency requesting a Schedule C position in order to ensure that such provisions are not overlooked. Some confusion seems to have arisen in this problem because of what some may perceive as OPM's "subservience" to the White House. ... The EOP's power to review Schedule C appointments may be limited in the case of the independent agencies, or when the organic act of an agency specifically precludes review by the EOP.

25. Two decades after the OLC opinion referenced and excerpted above settled the law in this regard, an unsigned two-page OPM directive (entitled "Schedule C and Non-Career SES Appointment Process") with an internal White House form attached (entitled "PPO Non-Career Appointment Form") dated March 12, 2001 was transmitted to both executive branch departments and independent agencies, including the USCCR, by the OPM's White House Liaison. It was never published in the Federal Register or even published on the website of the EOP, the OPM, or any other agency.

26. The OPM directive memorialized the "new OPM rule" for processing non-career SES and Schedule C appointments. It creates numerous new laws, rights, and duties. For example, it arrogates new powers to the White House Office of Presidential Personnel (WH OPP) employees and the OPM White House Liaison, alters the pre-existing rights of the USCCR Commissioners and their Special Assistants, and imposes new duties to be carried out by WH OPP employees, the OPM White House Liaison, the USCCR Commissioners, the USCCR Staff Director, the USCCR Human Resources Director, and the USCCR Commissioners' Special Assistants. At the end, it states in bold type: "Note: OPM will NOT grant the legal authority for any

positions/appointments without the prior concurrence and approval of the White House Office of Presidential Personnel."

27.     The new OPM rule makes the discharge of the OPM's ministerial duty (to approve the agency heads' requests for the Schedule C exception of certain positions) contingent upon the outcome of a White House "political clearance" examination so as enable the White House to coerce agency heads to appoint individuals from its "must-hire list" and veto/revoke the appointment of anyone not on the list.  This transparent purpose is confirmed by an illustrative excerpt from the *White House Interview Program Report No. 27: The White House Office of Presidential Personnel* (authored by Mr. Bradley Patterson, a scholar who worked at the EOP during the Eisenhower, Nixon, and Ford Administrations, and Mr. James Pfiffner, a distinguished professor at George Mason University):

> President [George H.W.] Bush ... chose Chase Untermeyer to head his Office of Presidential Personnel. ... The main criterion for a Bush administration appointment was a personal loyalty to George Bush and two special groups were set up to assure that demonstrated loyalty was rewarded. The president's nephew, Scott Bush, was put in charge of drawing up lists of those who had worked in the Bush campaign whose names would be sent to departments to be appointed to Schedule C positions. The president's son, George W. Bush, was put in charge of a group called the "Silent Committee" which drew up lists of those who had been loyal to George Bush over his career – to make sure that they were "taken care of" in the appointments process.
> (Interview with Chase Untermeyer on July 6, 1999 in Houston, Texas: "[T]he lists of the deserving were determined and we were able to figure out the allocations per cabinet department. I briefed the cabinet in a memorable moment telling them the number of Schedule C positions they had and that *we* would send over names for people to fill those positions. The whole purpose of this was to reward the people who had worked in the Bush campaign.") ... Untermeyer maintains that White House control is important for political ... reasons. When considering Schedule C appointments, one cabinet secretary asked him: "You mean I have to hire somebody just because they worked in the campaign?" Untermeyer replied, "Yes." ... [T]he political reality was that "our job was to find places for people who had worked in the 1988 campaign."

28.     The new OPM rule incorrectly asserts that the Schedule C exception of all Schedule C positions requires OPM approval.  It fails to distinguish between the less common Y8M positions (i.e., the "legal authority code," pursuant to the OPM "Guide to Processing Personnel

Actions" (GPPA), for appointments to those Schedule C positions that are excepted by the Congress via statute or the President via executive order) versus the more common Y7M positions (i.e., the GPPA's "legal authority code" for appointments to those Schedule C positions that are excepted by the OPM Director via 5 C.F.R. § 213.3301).

29.     The new OPM rule incorrectly asserts that every appointment to any Schedule C position requires White House approval.  It fails to make the distinction between the disparate types of Schedule C positions: the type within the White House versus the type at the executive branch departments versus the type at the quasi-executive independent agencies versus the type at the quasi-legislative and quasi-judicial independent agencies such the USCCR and the U.S. Tax Court (whose 37 trial clerks and confidential secretaries are Schedule C appointees).

30.     The new OPM rule makes no allowance for the fact that every agency and agency head is required by law to give preference to preference eligible veterans over non-preference eligibles. Compliance with the OPM directive compels violations of the veterans' preference rights of those Schedule C applicants, selectees, candidates, appointees, and employees who are not on the "must-hire" list or whose appointments are denied approval by the White House and/or the OPM.  This foreseeable and inevitable veterans' preference violation is especially egregious in the instant case because Commissioner Taylor's appointment of Mr. Daly was vetoed/revoked by the White House at the same time it was referring non-preference eligibles to the Commission for appointment to Mr. Daly's position.

31.     The new OPM rule directs the OPM and every employing agency including the USCCR to create a system of records covered by the Privacy Act.  The directive makes no mention of the requirements and prohibitions of that statute, and actually compels civil and criminal violations thereof.  For example, the USCCR has never published the requisite notice in the Federal

Register to disclose and describe the system of records it maintains, collects, uses, and disseminates for its non-career SES and Schedule C applicants, appointees, and employees.

32. Ms. Toni Johnson was appointed to the statutory position of Special Assistant to USCCR Commissioner Peter Kirsanow in January 2003. Ms. Johnson entered onto duty and took her oath of office on February 3, 2003. The new OPM rule compelled Ms. Johnson to confess her Democratic Party affiliation in writing on a form. During her interview with White House employees Jan Williams and Katja Bullock, Ms. Johnson gave unsatisfactory answers when asked whether she subscribed to the President's political views on issues such as affirmative action in college admissions, the Florida Recount, and the war on terror. As a result, the Commission's request for White House political clearance of Ms. Johnson's appointment was denied and OPM White House Liaison Amanda Becker refused to approve the Schedule C exception of Commissioner Kirsanow's Special Assistant position. For that reason, USCCR Human Resources Director Tina Louise Martin separated Ms. Johnson from her duly appointed position and the Commission payroll by non-adverse termination on April 3, 2003.

33. In April 2003, Ms. Williams selected three candidates from the must-hire list for Mr. Kirsanow to choose from and referred their resumes to Mr. Kirsanow. Mr. Christopher Jennings earned placement on the White House's must-hire list as a reward for the services he rendered to the Bush-Cheney campaign as an opposition research specialist employed by the Republican National Committee. Mr. Kirsanow selected Mr. Jennings and appointed him to the putatively vacant Special Assistant position. White House political clearance and OPM approval were granted. The job description for all eight Commissioner's Special Assistant positions is the same, and has not changed in more than a quarter century. Thus, the job description for which OPM *denied* continued Schedule C exception when Ms. Johnson was Commissioner Kirsanow's appointee was exactly the same job description for which OPM *granted* continued Schedule C

exception when Mr. Jennings was Commissioner Kirsanow's appointee.  Defendant OPM's conclusion that the position qualifies for exception when filled by a white, male, Republican on the White House's must-hire list, but does not qualify for exception when filled by a black, female, Democrat not on that list is completely irrational, indefensible, and manifestly contrary to law.

34.     Plaintiff was appointed to the statutory position of Special Assistant to USCCR Commissioner Ashley Taylor on January 23, 2005.  On that afternoon, Commissioner Taylor exercised his judgment to appoint Mr. Daly and notified Mr. Daly via e-mail.  Commissioner Taylor wrote "I would like to offer you the position."  In that same appointment notification email, Commissioner Taylor gave Mr. Daly his first assignment: "If you are willing to accept, I would like you to prepare an appropriate letter for me to send the other candidates that expressed an interest in the job."  Mr. Daly accepted his appointment minutes later via e-mail and several weeks later wrote the "thank you for your interest, but I appointed someone else" letter that was signed by Commissioner Taylor and mailed to the unsuccessful applicants for appointment to Mr. Daly's position.

35.     Mr. Daly was transferred to the Commission from his career appointment in the competitive service at DOL with no break in service.

36.     The selection, appointment, and transfer of Plaintiff to his Schedule C position and retention therein were all governed by 5 U.S.C. § 1302(c) ("preference shall be given to preference eligibles … in appointment, reinstatement, reemployment, and retention, in the excepted service"), 5 C.F.R. §302.101(c)(7) ("each agency shall follow the principle of veteran preference as far as administratively feasible" for "positions included in Schedule C"), and USCCR Administrative Instruction (AI) 2-14 § 2.01 (the USCCR shall "ensur[e] that preference in appointments is granted to all qualified veteran eligibles, and that veterans eligible for

noncompetitive appointments—including those with service-connected disabilities—are given full consideration for such appointments."). Plaintiff, a 10-point compensable preference eligible veteran entitled to preference over all non-preference eligibles for appointment to his USCCR Commissioner's Special Assistant position, apprised Commissioner Taylor of his entitlement to preferential treatment and Commissioner Taylor (a graduate of the Virginia Military Institute) informed Plaintiff that no other applicant was a veteran and he did in fact grant Plaintiff preference over the other applicants as a result. Unbeknownst to Plaintiff and Commissioner Taylor, weeks earlier the White House referred the resumes of several non-preference eligibles on its must-hire list to the USCCR Staff Director as pre-cleared for appointment to any vacant USCCR Schedule C position including Commissioner Taylor's Special Assistant position.

37.     Mr. Daly entered onto duty and took his oath of office on January 30, 2005.

38.     Before altering the recordation of Mr. Daly's appointment, the Commission originally recorded Mr. Daly's appointment under Schedule C appointing authority. Between 1987 and 2001, the Commission recorded every appointment of a Commissioner's Special Assistant (made within the first year of the Commissioner's entrance onto duty) under transitional Schedule C appointing authority.

39.     Thereafter, for the purpose of enabling the White House to veto and revoke Commissioner Taylor's selection and appointment of his own Special Assistant, the OPM caused the Commission to: (a) record Mr. Daly's Schedule C appointment to a Schedule C position under Schedule A appointing authority pending the acquisition of approval from both the White House and OPM to convert his appointment from Schedule A to Schedule C; (b) request OPM's approval or disapproval of the Congress' statutory Schedule C exception of Commissioner Taylor's Special Assistant position; (c) create a record of the manner in which Mr. Daly did or did not choose to exercise his First Amendment rights and electoral franchise and transmit that

record and his resume to the White House for its "political clearance" examination; and, (d) request the White House's approval of Mr. Daly's appointment.

40.    In February 2003, the White House OPP informed Mr. Daly it ascertained that he: (a) was a registered Republican whose name was not among the hundreds of names on the White House's must-hire list, (b) did not make an itemized campaign contribution, (c) was not related to or sponsored by a bundler of campaign donations, (d) did not vote for George W. Bush in the 2000 presidential primary election, (e) did not work for or volunteer on the Bush-Cheney 2000 campaign prior to the general election, (f) did not work for or volunteer on the President's 2001 inaugural committee, (g) did not work for or volunteer on the Bush-Cheney 2004 re-election campaign, and, (h) did not work for or volunteer on the President's 2005 inaugural committee.

41.    As a result, White House employees Katja Bullock and Amanda Becker refused to grant White House approval, and refused to send an email to the OPM White House Liaison authorizing her to sign Mr. Daly's OPM Form 1019.

42.    For that reason, OPM White House Liaison Carrie Cabelka refused to approve the Schedule C exception of Commissioner Taylor's Special Assistant position, and refused to affix her signature to the bottom of Mr. Daly's OPM Form 1019 and remit it to the USCCR.

43.    For that reason, USCCR Human Resources Director Tina Louise Martin separated Mr. Daly from his duly appointed position and from the Commission payroll by non-adverse termination 60 days later on April 1, 2005.

44.    Unlike Commissioner Kirsanow, Commissioner Taylor declined to appoint any of the must-hires (none of whom was a preference eligible veteran) referred to the Commission by the White House. Mr. Taylor did not appoint someone other than Mr. Daly to his putatively vacant Special Assistant position until the fall of 2007. In order to circumvent the process that would enable the White House and the OPM to again interfere with Mr. Taylor's selection and

appointment of his own Special Assistant, the Commission simply did not request White House political clearance or OPM approval for Mr. Taylor's Schedule C appointment of Ms. Kimberly Schuld.

45.     The presidential administration under Defendant Obama has perpetuated and replicated the violations of law committed by its predecessor. For example, the Commission requested approval from the EOP and OPM after USCCR Commissioner Yaki appointed an individual to his Commissioner's Special Assistant position. Commissioner Yaki's Special Assistant was restrained from entering onto duty until both White House and OPM approval were obtained.

## CAUSES OF ACTION

### COUNT ONE – Violations of veterans' preference rights

46.     Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

47.     Actions of Defendant OPM comprised a willful violation of Plaintiff's statutory and regulatory entitlements to veterans' preference in appointment to his Schedule C position and retention in the civil service. As a result of the application of the new OPM rule, Plaintiff's veterans' preference mandated by law was frustrated by the interference of a political patronage preference forbidden by law.

48.     Plaintiff respectfully requests that this Court order Defendant OPM to comply with those laws, rules, and regulations related to his veterans' preference, award Plaintiff compensation for the loss of wages and benefits he suffered by reason of that violation, and award Plaintiff an amount equal to back pay as liquidated damages. 5 U.S.C. § 3330c(a).

### COUNT TWO – Declaratory and Injunctive Relief

49.     Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

50.     Plaintiff respectfully requests that this Court declare him to be entitled to be credited with two additional years of time in service towards his eligibility to retire with full pension benefits.

51.     Plaintiff respectfully requests that this Court declare that the processing, recordation, improper revocation, and constructive termination of Plaintiff's appointment is improper, unjustified, unwarranted, arbitrary, capricious, and contrary to law.

52.     Plaintiff respectfully requests that this Court declare that Defendant President's application of the White House's political clearance examination and patronage must-hire referral customs to non-career SES and Schedule C positions at the independent agencies, and especially the USCCR, is contrary to law.

53.     Plaintiff respectfully requests that this Court enjoin Defendant President and Defendant OPM Director from continuing their illegal interference with the exercise of the internal personnel decision-making and appointing powers delegated to the independent agency heads, such as Defendant USCCR Commissioners, by statute.

54.     Plaintiff respectfully requests that this Court declare that Defendant President lacks the legal authority to veto, revoke, or terminate Plaintiff's appointment, and that the EOP's interference with Plaintiff's appointment is improper, unjustified, unwarranted, arbitrary, capricious, and contrary to law.

55.     Plaintiff respectfully requests that this Court declare that OPM's policy of making its approval of agency heads' requests for the Schedule C exception of proposed Y7M positions contingent upon EOP's approval is contrary to law.

56.     Plaintiff respectfully requests that this Court declare that Defendant OPM Director lacks the legal authority to approve or disapprove the Schedule C exception of USCCR Commissioners' Special Assistant positions or any other Y8M positions (i.e., those positions excepted by the Congress via statute or the President via Executive Order).

57.     Plaintiff respectfully requests that this Court declare that Defendant OPM Director lacks the legal authority to veto, revoke, or terminate Plaintiff's appointment and Defendant OPM's interference with Plaintiff's appointment is improper, unjustified, unwarranted, arbitrary, capricious, and contrary to law.

58.     Plaintiff respectfully requests that this Court declare that the Congress delegated plenary appointing power to Defendant USCCR Commissioners to select and appoint their own Special Assistants.

59.     Plaintiff respectfully requests that this Court declare that the USCCR failed to discharge its ministerial duty to record Plaintiff's appointments in the manner prescribed by law.

60.     Plaintiff respectfully requests that this Court declare that USCCR Commissioners' Special Assistant positions are Y8M positions (i.e., the GPPA's "legal authority code" for appointments to those Schedule C positions that are authorized, established, and excepted from the competitive service by the Congress via statute or the President via executive order) pursuant to the Commission's annual appropriation statute; or, in the alternative, declare that USCCR Commissioners' Special Assistant positions are Y7M positions (i.e., the GPPA's "legal authority code" for appointments to those Schedule C positions that are authorized, established, and excepted from the competitive service by Defendant OPM under the legal authority of 5 C.F.R. § 213.3301) and declare that Defendant OPM Director has a ministerial duty to approve Defendant USCCR's requests for the Schedule C exception of all eight Commissioner's Special Assistant positions.

61.     Plaintiff respectfully requests that this Court declare that the USCCR's requests for EOP's review and/or approval of USCCR Commissioners' appointments of their Special Assistants was improper, unjustified, unwarranted, arbitrary, capricious, and contrary to law.

62.     Plaintiff respectfully requests that this Court declare that the recordation of Plaintiff's appointment on Standard Forms 52 and 50 under legal authority W9P (i.e., the GPPA's "legal authority code" for 30-day, critical hiring need, provisional, Schedule A appointments under 5 C.F.R. § 213.3102(i)) rather than legal authority Y8M was improper, unjustified, unwarranted, arbitrary, capricious, and contrary to law; or, in the alternative, declare that the recordation of Plaintiff's appointment on Standard Forms 52 and 50 under legal authority W9P rather than Y9K (i.e., the GPPA's "legal authority code" for 120-day, temporary, transitional, Schedule C appointments under the legal authority of 5 C.F.R. § 213.3302) and Y7M conversion was improper, unjustified, unwarranted, arbitrary, capricious, and contrary to law.

63.     Plaintiff respectfully requests that this Court declare that Plaintiff's appointment to his position was improperly revoked by the President and/or his agents at the EOP and/or OPM.

64.     Plaintiff respectfully requests that this Court declare that Plaintiff was improperly separated from his duly appointed position and his termination on April 1, 2005 is null and void.

65.     Plaintiff respectfully requests that this Court declare that Plaintiff is entitled to all of the privileges and emoluments of his position through the date when his Commissioner was legally separated by expiration of fixed-term appointment.

**COUNT THREE – Substantive and procedural violations of the APA**

66.     Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

67.     Actions of the Defendants were arbitrary, capricious, and contrary to the case law, statutes, executive orders, rules, and regulations that mandated the exception of Plaintiff's position from the examining requirements of the competitive service and prescribed the manner in which Plaintiff's appointment was required to be processed, effectuated, and recorded.

68. Actions of Defendant OPM failed to comply with the APA's notice and comment rulemaking procedures.

69. These actions harmed Plaintiff, and he is entitled to appropriate relief.

## COUNT FOUR – Accardi doctrine

70. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

71. Actions of the Defendants failed to comply with the Defendant agencies' own rules and regulations.

72. These actions harmed Plaintiff, and he is entitled to appropriate relief.

## COUNT FIVE – *Ultra vires* doctrine

73. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

74. Actions of the Defendants exceeded their statutory authority and constitutional authority.

75. These actions harmed Plaintiff, and he is entitled to appropriate relief.

## COUNT SIX – First Amendment

76. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

77. Actions of the Defendants violated Plaintiff's rights under the First Amendment to the United States Constitution.

78. These actions harmed Plaintiff, and he is entitled to appropriate relief.

## COUNT SEVEN – Equal Protection

79. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

80.     Actions of the Defendants violated Plaintiff's rights under the Equal Protection Clause of the United States Constitution.

81.     These actions harmed Plaintiff, and he is entitled to appropriate relief.

**COUNT EIGHT – Due Process**

82.     Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

83.     Actions of the Defendants violated Plaintiff's substantive and procedural rights under the Due Process Clause of the United States Constitution.

84.     These actions harmed Plaintiff, and he is entitled to appropriate relief.

**COUNT NINE – Separation of Powers Doctrine**

85.     Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

86.     Actions of the Defendants violated the Separation of Powers Doctrine of the United States Constitution.

87.     These actions harmed Plaintiff, and he is entitled to appropriate relief.

**COUNT TEN – Mandamus**

88.     Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

89.     Defendants owe Plaintiff a clear and ministerial duty to record his appointment in the manner prescribed by applicable judicial decisions, statutes, executive orders, rules, and regulations. Defendants continue to fail to discharge that duty, thereby depriving Plaintiff of the privileges and emoluments of his duly appointed position.

90.     Plaintiff respectfully requests that this Court issue a Writ of Mandamus directing Defendants to discharge their ministerial duties, thereby putting Plaintiff in the *status quo ante*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court provide for a jury trial of all issues so triable, grant Plaintiff all relief requested above, award Plaintiff his attorney fees, expert witness fees, and other expenses associated with this action, and grant such other and further relief as may be appropriate.

Respectfully submitted,

Mr. Jack W. Daly
6035 Woodlake Lane
Alexandria, VA 22315
Mobile: (703) 200-6057
E-Mail: JackWDaly@gmail.com